UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNIERL COOPER,

                Plaintiff,        Civil Action No. 16-11567
                                     Honorable Paul D. Borman
                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]**

Plaintiff Annierl Cooper ("Cooper") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Cooper is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Cooper's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On November 7, 2011, Cooper filed an application for SSI, alleging disability as of January 1, 2009. (Tr. 251-56). This application was denied initially on February 7, 2012. (Tr. 168-71). After a hearing (Tr. 80-124), ALJ Beth Contorer issued a written decision on May 14, 2013, finding that Cooper was not disabled under the Act (Tr. 150-58). Subsequently, in August 2014, the Appeals Council vacated the ALJ's decision and remanded the matter for a new hearing and decision. (Tr. 164-66). ALJ Contorer held that hearing on November 21, 2014, where Cooper, who was represented by attorney Andrea Hamm, testified, along with vocational expert Pauline Pegram. (Tr. 32-79). On December 17, 2014, the ALJ issued a written decision again finding that Cooper is not disabled under the Act. (Tr. 15-25). On March 3, 2016, the Appeals Council denied review. (Tr. 1-6). Cooper timely filed for judicial review of the final decision on May 2, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

2

>mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Cooper's Reports and Testimony

At the time of the hearing, Cooper was 54 years old, and at 5'7" tall, weighed 158 pounds. (Tr. 35, 287, 308). She completed high school and two years of college. (Tr. 309). At the time of the hearing, Cooper was single and living with her sister (who was receiving disability benefits for rheumatoid arthritis). (Tr. 35-36, 41). Previously, Cooper worked as an administrative clerk for the City of Highland Park; however, she has not worked since 2002, after which she brought a wrongful discharge suit against her former employer, which ultimately settled. (Tr. 37-38, 309). She indicated that she decided not to look for other work while the lawsuit was pending and then subsequently became disabled in 2009. (Tr. 37-38, 308).

Cooper alleges disability primarily as a result of back and leg pain, a lung nodule, and chronic obstructive pulmonary disease ("COPD"). (Tr. 308). She uses a nebulizer once or twice a day but still suffers shortness of breath with exertion. (Tr. 45-46). She takes Norco and Flexeril, and has had epidural steroid injections, all of which provide her some pain relief. (Tr. 57). She also testified that she can lift 8-10 pounds, stand for 15 minutes at a time, sit for 30 minutes at a time, and walk 1 ½ blocks. (Tr. 62-63).

Cooper has a history of illicit drug use (including marijuana, cocaine, and heroin), but she testified at the November 2014 administrative hearing that she had not used drugs since April 2014. (Tr. 49). Cooper also testified that she generally leaves the house only for doctors' appointments. (Tr. 43, 302). She does very little around the house and allegedly requires assistance with everything from getting dressed to bathing to caring for her hair to using the toilet. (Tr. 68, 300). Her (disabled) sister does the grocery shopping and cooking because, "due to back pains," Cooper is unable to stand for long periods of time. (Tr. 41, 301-02).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Cooper's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Pauline Pegram testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 74-79). The ALJ asked the VE to imagine a claimant of Cooper's age, education, and work experience who can perform sedentary work, with the following additional limitations: frequent pushing and pulling; can sit for six and stand and/or walk for two of eight hours in a workday, with the ability to alternate between sitting and standing up to two times per hour, and

should never have to sit, stand, or walk for more than one hour at a time; no climbing of ropes, scaffolds, or ladders; only occasionally performing all other postural activities; no exposure to hazards such as heights or heavy machinery; and no concentrated exposure to respiratory irritants.  (Tr. 75-77).  The VE testified that the hypothetical individual would be capable of performing Cooper's past relevant work as a clerk-typist.  (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Cooper is not disabled under the Act.  At Step One, the ALJ found that Cooper has not engaged in substantial gainful since November 7, 2011 (the application date).  (Tr. 17).  At Step Two, the ALJ found that Cooper has the severe impairments of status post lung cancer with right upper lobectomy, COPD, and lumbar degenerative disc disease.  (*Id.*).  At Step Three, the ALJ found that Cooper's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 18).

The ALJ then assessed Cooper's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations:  frequent pushing and pulling; can sit for six and stand and/or walk for two of eight hours in a workday, with the ability to alternate between sitting and standing up to two times per hour, and should never have to sit, stand, or walk for more than one hour at a time; no climbing of ropes, scaffolds, or ladders; only occasionally performing all other postural activities; no exposure to hazards such as heights or heavy machinery; and no concentrated exposure to respiratory irritants.  (*Id.*).

At Step Four, the ALJ determined, based in part on the VE's testimony, that Cooper is capable of performing her past relevant work as a clerk-typist.  (Tr. 24).  As a result, the ALJ

concluded that Cooper is not disabled under the Act. (Tr. 25).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

In her motion, Cooper argues that the ALJ erred by (1) not affording adequate weight to the opinions of her treating physicians; (2) failing to comply with Social Security Ruling ("SSR") 96-8p by not including a "function-by-function" assessment in her RFC finding; (3) failing to properly address her lumbar spine condition, by not calling a medical expert to testify at the administrative hearing; (4) failing to discuss or consider the side effects of her medications; and (5) failing to consider all of the factors set forth in 20 C.F.R. §416.929(c)(3) for evaluating her subjective complaints. (Doc. #10 at 14-23).[1]

---

[1] The Court notes that there is a vast amount of medical evidence in the record pertaining to Cooper's impairments. For example, a November 2011 PET scan confirmed an irregular pulmonary nodule (Tr. 476-77); as a result, Cooper underwent a right upper lobectomy in January 2012 (Tr. 481). At subsequent follow-up visits, however, there was no further evidence of lung cancer (Tr. 885, 1099, 1235, 1262), and Cooper has not required further treatment for

*1. Substantial Evidence Supports the ALJ's Evaluation of the
Medical Evidence from Treating Physicians Dr. Sethi and Dr. Osta*

Cooper first argues that the ALJ failed to comply with the so-called treating physician rule set forth in 20 C.F.R. §416.927(c)(2).[2]  (*Id.* at 14-17).  Specifically, Cooper asserts that the ALJ erred "by failing to accord adequate weight to the opinion of [her] treating physicians when she did not address objective medical examination findings, the MRI from November 5, 2011, as well as the multiple opinions concerning the severity of [her] lumbar spine condition."  (*Id.* at 16).  Cooper also cites treatment reports from two physicians, Anil Sethi, M.D. and Walid Osta, M.D., arguing that the Court should remand this matter "for a proper evaluation of Drs. Sethi's and Osta's medical documentation."  (*Id.* at 17).

Cooper first cites a treatment report from Dr. Sethi dated April 24, 2012, claiming that, as of that date, "she continued to complain of low back pain that radiated to both lower extremities."  (*Id.* at 15 (citing Tr. 910-11)).  At that visit, Dr. Sethi conducted a physical examination, which revealed tenderness over the lumbar spine, but Cooper had negative straight leg raising tests bilaterally, intact sensation in both lower extremities, and no motor deficit in either lower extremity.  (Tr. 910-11).  Dr. Sethi noted that physical therapy had not been helpful and suggested epidural steroid injections, which Cooper agreed to try.  (Tr. 911).

Cooper next cites an April 30, 2014 treatment report from Dr. Osta, claiming that he

---

this condition.  Similarly, CT scans performed in 2013 revealed both a simple renal cyst and a complex renal cyst, but Cooper opted to observe the cysts with follow-up scans, rather than to proceed with treatment.  (Tr. 1064-66).  Subsequent scans showed no further evidence of the complex cyst, and only continued observation was recommended.  (Tr. 1163).  In her motion for summary judgment, however, Cooper's arguments focus only on the ALJ's evaluation of her musculoskeletal disabilities (specifically, her lumbar spine condition and treatment).  (Doc. #10 at 14-23).  Thus, the Court too will focus on medical evidence related to that condition.

[2] 20 C.F.R. §416.927(c)(2) provides that, where a treating source's "medical opinion … is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight.

"diagnosed her with lumbar radiculitis" and asserting that, as of that date, she "continue[d] to have significant back pain with radiation to her lower extremities."[3] (Doc. #10 at 16 (referencing Tr. 1133-34)). At that visit, Dr. Osta discussed Cooper's symptoms of low back pain and radiculitis, noting that she "reported 80% relief of the low back pain symptoms" after a prior epidural steroid injection. (Tr. 1133). Thus, Dr. Osta proceeded to perform a lumbar epidural steroid injection at L5-S1 and a lumbar epidurogram. (*Id.*).

Considering the two treatment reports cited by Cooper, her argument that the ALJ erred in applying the treating physician rule fails because she has not identified any medical *opinion* that the ALJ ignored. The regulations provide that, "Medical opinions are statements from acceptable medical sources that *reflect judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §416.927(a)(2) (emphasis added). Here, the medical records cited by Cooper provide no opinion as to what she can do despite her symptoms, or what her physical restrictions might be. Accordingly, these reports do not constitute opinions to be afforded controlling weight under the treating physician rule. *See, e.g., Winter v. Comm'r of Soc. Sec.*, 2013 WL 4604782, at *9 (E.D. Mich. Aug. 29, 2013) ("But [Plaintiff's treating physician] never opined on what he believed [Plaintiff] could still do in view of her symptoms; in other words, he offered no opinion on his patient's ability to function.").

Cooper also faults the ALJ for not adequately discussing a November 2011 MRI report.

---

[3] Although the ALJ did not expressly discuss this treatment report, she gave significant weight to the September 4, 2014 consultative examination conducted by Cynthia Shelby-Lane, M.D., who specifically discussed the fact that Cooper had "epidural nerve blocks most recently in 4/2014." (Tr. 23-24, 1041). Thus, the ALJ clearly was aware of this aspect of Cooper's treatment. More importantly, Dr. Osta's April 24, 2014 report does not so much support Cooper's allegations of disability as it does illustrate the beneficial effects of the treatment she received, as Dr. Osta specifically noted Cooper's report of "80% relief of the low back pain symptoms following a previous similar procedure that lasted for over 2 month[s]." (Tr. 1133).

This argument fails for a few reasons. First, the law is clear that an ALJ is not required to specifically address each and every piece of evidence in the record, let alone each and every finding in that evidence universe, in order to have considered the entire record. *See Kornecky*, 167 F. Appx' at 508. Second, the ALJ did address relevant evidence regarding Cooper's back impairment, including an October 2011 x-ray report and the November 2011 MRI report,[4] stating:

> [W]hile records indicate that the claimant was experiencing difficulties with knee pain in September 2011 likely resulting from lumbar radiculopathy [citing Tr. 460], an MRI from the following month October 2011 revealed only mild degenerative changes in the lumbar spine [citing Tr. 454, 528-29, 933, 975].

(Tr. 20). Cooper's argument that the ALJ "clearly disregarded" the findings from this November 2011 MRI report, which she asserts demonstrate far more than "mild degenerative changes," lacks merit. (Doc. #10 at 15-16). As an initial matter, this report did reveal "mild degenerative changes in the bilateral sacroiliac joints" (Tr. 529), similar to the findings on the October 2011 x-ray report, which showed "mild degenerative changes within the lower lumbar spine with grade 1 anterolisthesis of L4 on L5 and L5 on S1" (Tr. 454). Moreover, to the extent Cooper argues that the ALJ minimized the findings of the November 2011 MRI report – for example, by failing to mention that it showed interval progression of her degenerative disc disease, facet arthopathy, and disc bulges/protrusions – this MRI report was reviewed by state agency physician Sonia Ramirez-Jacobs, M.D., who prepared a Disability Determination Explanation in February 2012. (Tr. 135-45). Dr. Ramirez-Jacobs specifically discussed the very MRI findings referenced by Cooper (Tr. 138) and nevertheless found that Cooper retains the RFC to perform sedentary work

---

[4] Although the ALJ mistakenly identified the November 2011 MRI report as being from October 2011 (the date of a contemporaneous x-ray report (Tr. 454)), this error is harmless where it is clear that the ALJ considered the findings of this MRI report.

10

(Tr. 140-43). The ALJ afforded this opinion significant weight (Tr. 24), a finding Cooper has not challenged. Thus, the Court finds no violation of the treating physician rule.[5]

>     2.    *Cooper's Argument that the ALJ Erred in Failing to Articulate a Function-By-Function RFC Assessment is Without Merit*

Cooper next argues that the ALJ did not comply with SSR 96-8p by not including in her decision a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). (Doc. #10 at 17-19 (citing *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *1 (July 2, 1996))). Indeed, Cooper claims that "nowhere in the ALJ's decision, other than granting significant weight to Dr. Shelby-Lane's opinion, does the ALJ address the rest of the medical documentation concerning [her] ability to sit, stand, walk, lift, carry, push, and pull as required by SSR 96-8p." (*Id.* at 18).

The Sixth Circuit has expressly rejected this very argument:

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing …. [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)); *see also Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (ALJ met requirements of

---

[5] Aside from these three records, Cooper has identified no other specific medical evidence that the ALJ allegedly ignored or improperly discounted, choosing instead to only vaguely assert that the ALJ erred in failing to accord adequate weight to "the multiple opinions concerning the severity of [her] lumbar spine condition." (Doc. #10 at 16). This is insufficient to preserve any arguments Cooper might otherwise have regarding the ALJ's weighing of other medical opinions or evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).

SSR 96-8p where the medical evidence supported assessment of medium work capacity).

Moreover, in this case, the ALJ <u>did</u> assess Cooper's ability to perform each of the seven strength demands, finding that she can perform a reduced range of sedentary work, which – as defined by the regulations – involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of objects such as docket files, ledgers, and small tools. *See* 20 C.F.R. §416.967(b). The RFC assessed by the ALJ also addressed Cooper's capacity to push and pull (limiting her to doing so frequently) and sit, stand, and walk (finding that she has the RFC to "sit for six of eight, and stand and/or walk for two of eight hours of a workday, with the ability to alternate between sitting and standing up to two times per hour, and should never have to sit, stand or walk for more than one hour at a time"). (Tr. 18). In addition, the RFC assessed by the ALJ is generally consistent with – if not more restrictive than – the findings of Dr. Shelby-Lane, who opined that Cooper can occasionally lift and carry up to 20 pounds; sit, stand, and walk for up to one hour at a time; and frequently push and pull. (Tr. 1050-51). Under the circumstances, then, where the ALJ provided a detailed, thorough and fair discussion of the evidence, considered the impact of that evidence on Cooper's ability to perform work-related activities, and fashioned an RFC that is supported by the findings of the consultative examining physician, the Court finds the RFC analysis sufficient. *See Delgado*, 30 F. App'x at 547-48.

### 3. The ALJ Was Not Required to Call a Medical Expert to Testify at the Hearing on the Issue of Medical Equivalence

Citing SSR 96-6p, Cooper next argues that the ALJ erred by not calling a medical advisor to provide an updated medical opinion at the hearing. (Doc. #10 at 19-20). Specifically, Cooper again cites the November 5, 2011 MRI, which she characterizes as "showing impingement at three levels including L3, L4, L5 as well as canal compromise." (*Id.* at 20 (citing Tr. 1062-63)). Cooper claims that this MRI report was not reviewed by consultative examiner Dr. Shelby-Lane

and, as a result, "the medical documentation does in fact support lumbar spinal stenosis and a listing equivalency needed to be determined by a medical advisor."[6] (*Id.* at 20). For the reasons set forth below, the Court disagrees.

SSR 96-6p provides that an ALJ must obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3-4 (July 2, 1996). Here, however, the November 2011 MRI report cited by Cooper is not "additional medical evidence" because it was already associated with the file at the time the file was reviewed by state agency physician Dr. Ramirez-Jacobs.[7] Indeed, Dr. Ramirez-Jacobs specifically referenced this MRI in her Disability Determination Explanation,

---

[6] Cooper neither argues that she meets Listing 1.04 nor otherwise attacks the ALJ's Step Three analysis on the merits; rather, she only challenges the ALJ's decision not to obtain an additional medical opinion on the issue of equivalence. (Doc. #10 at 20). Regardless, despite citations to findings of both "impingement" and "canal compromise" (*id.*), it is clear that evidence does not establish that Cooper meets Listing 1.04(A) or 1.04(C). Listing 1.04(A) contemplates disorders of the spine, including degenerative disc disease, which result in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) …." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §1.04(A). Here, even if there is some evidence of nerve root compression, Cooper has pointed to no evidence of motor loss, sensory or reflex loss, or positive straight-leg raising tests. Similarly, Listing 1.04(C) requires "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §1.04(C). Again, Cooper points to no evidence of pseudoclaudication or an inability to ambulate effectively. Thus, even if Cooper had challenged the ALJ's Step Three findings on the merits, the Court finds no error warranting remand.

[7] While Cooper identifies the November 2011 MRI report as associated with the file in September 2014 (Tr. 1062-63), the same MRI report is also found much earlier in the record (Tr. 528-29), as well as with records received from Harper University Hospital in February 2012 (Tr. 136).

13

noting the relevant findings that Cooper now cites. (Tr. 138, 142). Dr. Ramirez-Jacobs then signed the Disability Determination and Transmittal form, indicating her finding that medical equivalence had not been satisfied.[8] (Tr. 146). Thus, the Court is not persuaded that the November 2011 MRI report constitutes "additional medical evidence" that might have changed Dr. Ramirez-Jacobs' finding on equivalence, and finds no error in the ALJ's decision not to call an additional medical expert to testify at the hearing.[9]

### 4. The ALJ Properly Discussed and Considered the Side Effects of Cooper's Medications on Her Ability to Work

Cooper next references her use of Norco and Flexeril for her leg and back pain, arguing that "[n]owhere in the ALJ's decision does the ALJ consider [her] utilization of the narcotics and muscle relaxers or how her dizziness and drowsiness would affect her ability to … concentrate/stay on task which are relevant in assessing her RFC." (Doc. #10 at 21-22).

SSR 96-7p,[10] cited by Cooper, specifically provides that, in assessing the credibility of an individual's allegations of disability, one of the factors to be considered is the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

---

[8] The requirement in SSR 96-6p that a medical expert make a determination on equivalence is satisfied by the signature of the state agency medical consultant on the Disability Determination and Transmittal Form. *See Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3; *see also McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420, at *16 (E.D. Mich. June 25, 2013).

[9] While it is true that additional medical evidence has been associated with the file since Dr. Ramirez-Jacobs performed her assessment, Cooper has not identified a single document – other than the November 2011 MRI report – in support of her argument that such evidence might have changed Dr. Ramirez-Jacobs' opinion on equivalence. Moreover, the ALJ specifically considered this issue, finding that, "[w]hile new evidence was submitted subsequent to issuance of [Dr. Ramirez-Jacobs'] opinion, the opinion is still generally consistent with the record as a whole." (Tr. 24). Cooper has articulated no basis for the Court to disturb this finding.

[10] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. However, the ALJ's decision in this case was made prior to the effective date of SSR 16-3p and, accordingly, the ALJ followed SSR 96-7p, the policy statement in effect at the time of his decision.

pain or other symptoms …." *Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *3 (July 2, 1996). In this case, the ALJ explicitly addressed the numerous medications that Cooper takes for her various conditions, including Flexeril and Norco. (Tr. 19). Moreover, in evaluating Cooper's subjective complaints, the ALJ addressed the side effects of these various medications, noting that Cooper had previously denied any medication side effects and that medical records do not corroborate her allegations that her pain medications cause dizziness. (Tr. 20). Specifically, the ALJ stated:

> The claimant has also been prescribed, and has taken appropriate medications for back pain, which weighs in her favor, but the medical records reveal that the medications and other treatments have been relatively effective in controlling the claimant's symptoms. In fact, the claimant herself testified that epidurals provide significant, albeit not complete, relief. Moreover, she indicated that her pain medication was effective in controlling her pain. She did mention that her pain pills cause dizziness; however, the medical records, including office treatment notes, do not corroborate those allegations. In fact, in her paperwork on appeal, the claimant denied *any* medication side effects ([Tr. 320]).

(*Id.*). Thus, the ALJ appropriately considered and discussed the alleged side effects of Cooper's medications, and her argument to the contrary is without merit.

> 5. *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Finally, Cooper argues that the ALJ erred in failing to consider "all of the factors" enumerated in 20 C.F.R. §416.929(c)(3) when evaluating the credibility of her subjective complaints. (Doc. #10 at 22-23). Specifically, Cooper argues that, in addition to not considering her medication side effects (discussed in Section II(F)(4), *supra*), the ALJ "[did] not consider her daily activities, the intensity of the pain, her precipitating aggravating factors, and the other treatment that she receives to relieve her symptoms." (*Id.* at 23).

As an initial matter, courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to

15

observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must then consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §416.929(c)(3).

Here, in concluding that Cooper was less than fully credible, the ALJ properly considered each of these factors, as summarized below:

- *Daily activities*: The ALJ referenced Cooper's testimony regarding her inability to sit or stand for more than 10-15 minutes, her need to change positions frequently when watching television, and her alleged inability to perform most tasks around the house. (Tr. 19, 24 (citing Tr. 299-306)).

- *Location, duration, and frequency of pain and other symptoms*: The ALJ discussed Cooper's back pain, including the fact that, at one office visit, she "reported that her biggest problem was back pain, but on examination, it was noted that she was able to get on and off the examination table without any problem …." (Tr. 20 (citing Tr. 1121)).

- *Precipitating and aggravating factors*: The ALJ discussed Cooper's back spasms and the need to alternate positions while watching television or reading. (Tr. 19 (citing Tr. 299-306)).

- *Type, dosage, effectiveness, and side effects of medications*: As set forth above, the ALJ described Cooper's prescribed medications (Tr. 19 (citing Tr. 311, 330, 336, 385)), and noted that she denied side effects (Tr. 20 (citing Tr. 320)).

- *Treatment, other than medication, used to relieve pain*: The ALJ noted that Cooper was sent to physical therapy and received epidural steroid injections for

16

her back pain.  (Tr. 20 (citing Tr. 469-75, 562-69)).

Thus, in evaluating Cooper's subjective complaints, the ALJ thoroughly considered the relevant factors.  The ALJ also noted several other facts that detracted from the credibility of Cooper's allegations, including the fact that she stopped working some seven years before she allegedly became disabled; provided inconsistent testimony regarding when (and if) she stopped smoking, as well as her use of illegal drugs; and appeared at the first administrative hearing with supplemental oxygen, despite subsequent testimony that it was not medically necessary at that time.  (Tr. 19-20, 21).  Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Cooper's allegations of disability are less than fully credible.[11]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Cooper's Motion for Summary Judgment [10] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: March 27, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

---

[11] Cooper also asserts, almost in passing, that the ALJ failed to consider her testimony that "she has difficulty focusing and remembering due to her pain complaints and side effects from her medications."  (Doc. #10 at 23).  This is incorrect, as the ALJ specifically noted that, at a field office interview in November 2011, Cooper showed signs of back discomfort while sitting, but exhibited "no difficulties hearing, reading, understanding, being coherent, concentrating, talking, answering, standing, walking, seeing, using her hands, and writing[.]"  (Tr. 24 (citing Tr. 288)).

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2017.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager